In the Matter of the Application of ERNEST B. CROSBY and Others to Strike and Expunge from the Records of This Court a Certain Presentment Made to This Court by a Grand Jury of the County of Niagara.

Supreme Court, Niagara County, December 31, 1925.

**Grand jury — presentment or report to court — motion to strike from record — grand jury under Code of Criminal Procedure, § 260, has right to make presentment — presentment should be signed by foreman, attested by clerk and signed by at least twelve grand jurors, or contain statement that report is action of jury as body — presentment should contain facts — presentment is in part stricken from record.**

A grand jury has the power, under section 260 of the Code of Criminal Procedure, to make a presentment or report to the court of facts constituting neglect of duty by public officials.

Said presentment should be signed by the foreman of the grand jury and attested by the clerk, and signed by at least twelve members of the grand jury or should contain a statement that the report is the action of the grand jury as a body.

The presentment should contain facts supporting alleged neglect and not mere general allegations thereof or philosophical conclusions, and, therefore, the presentment or report of the grand jury of the county of Niagara should be stricken from the records of the court in so far as it contains general charges of neglect of duty by the mayor, police commissioners and chief of police of the city of Lockport, since it does not contain any facts on which the conclusions stated can be based.

APPLICATION to strike from records of court presentment made by grand jury.

*Moore & Jeffery* [*Donald S. Moore* of counsel], for the petitioners.

*Mortimer A. Federspiel, District Attorney,* for the People.

HARRIS, J. This is an application made by the petitioners for an order striking and expunging from the records of this court the presentment or report submitted to the court by the grand jury of Niagara county on the 30th day of October, 1925. The petitioners are the mayor and the police commissioners of the city of Lockport.

That portion of the so-called presentment or report to which the petitioners take exception and in which they are directly concerned is as follows:

" That we have investigated vice conditions in the City of Lockport. We have found that intoxicating liquors are freely sold, gambling openly carried on and houses of prostitution flagrantly operated. Such conditions should not exist, and it appears to us would not exist if the City officials charged with the enforcement of law did their duty.

" The Mayor, Board of Police Commissioners and Chief of Police of the City of Lockport are responsible for the enforcement of the law. All of these are men of eminent respectability, high character and engaged in lawful occupations. This is most commendable for decency in every community is of the first importance. Ruin and degredation of homes and families, boys and girls is the price of these law violations. The object of law is the preservation of morality and this is above every material consideration. Officers must be law respecting and law abiding. Water cannot rise above its level, so officers cannot rise above their own character. If they do not obey the laws themselves, they cannot expect or require others to do so. Men naturally encourage their chosen vocations. Criminals are no exceptions to this rule. Liquor dealers encourage the sale of intoxicating liquors, gamblers encourage

gambling, and prostitute mongers encourage prostitution. None of these need encouragement in Lockport. They need suppression.

"The Mayor, Board of Police Commissioners and Chief of Police of the City of Lockport either know these prevailing disgraceful conditions, or they do not know. If they do not know, their ignorance is inexcusable. If they do know, their neglect of duty is inexcusable. They have twenty-three policemen, and if these are not sufficient or efficient they have the power and authority to employ additional assistance. They could have employed detectives and thus obtained the necessary evidence to convict and punish these violators. But they have not done this. They have simply permitted things to drift and go on in an easy way, and by doing this encourage further violations and thus brought about the present disgraceful state of affairs.

"From evidence which came before us in cases submitted, we have no doubt similar conditions prevail in North Tonawanda and Niagara Falls. The situation is so bad that earnest, aggressive and drastic action on behalf of the officers charged with the enforcement of law is absolutely necessary in order to suppress and eradicate these vices which seriously menace public and private decency and morality."

The petitioners contend that such so-called presentment or report is without authority, false and misleading and an unwarranted imputation on the integrity, good faith and honesty of the petitioners.

I am of the opinion that by inference section 260 of the Code of Criminal Procedure gives authority for the making of a report by a grand jury on the matters mentioned in such section, and that there is excellent authority in the cases for the statement that a grand jury, in addition to presenting indictments and finding no bills, may make reports upon the matters specified, in such section, as a proper subject of inquiry by the grand jury, to wit:

"§ 260. The grand jury must inquire,

"1. Into the case of every person imprisoned in the jail of the county, on a criminal charge, and not indicted;

"2. Into the condition and management of the public prisons in the county; and

"3. Into the willful and corrupt misconduct in office, of public officers of every description, in the county." (*Matter of Heffernan*, 125 N. Y. Supp. 737, 738; *Matter of Woodbury*, 155 id. 851; *Matter of Osborne*, 68 Misc. 597, 603.)

Criticism may well be made of the form of the so-called presentment or report in question. (*Matter of Woodbury, supra.*)

I can see no apparent purpose to the use of the word " resolu-

Misc. 250] Supreme Court, December, 1925.

tions " with which the so-called presentment or report is entitled, and no reason for the signature of the same by only three grand jurors. It may be that the fact that the so-called presentment or report begins with the words " The grand jury * * * begs respectfully to report," the further fact that the so-called presentment or report bears at its bottom " The above was unanimously adopted," and is signed by the foreman and the clerk, take this so-called presentment or report out of the rule laid down in *Matter of Woodbury* (*supra*). Such so-called presentments or reports, in my opinion, should bear the signature of the foreman and the attestation of the clerk and the signature of at least twelve grand jurors, or a statement that the report is the action of the grand jury as a body.

The right to make such a so-called presentment or report is to be used with the utmost caution and with due respect for the rights of individuals mentioned in such so-called presentment or report, because the individuals so mentioned have no remedy or recourse against unjust accusations made in such a so-called presentment or report. As has been said in *Matter of Osborne* (*supra*), " from its ancient prestige, the deliverance of a grand jury, in the form of a presentment, is calculated to impress the public mind, and a person aggrieved, who has no opportunity to answer or defend, is justified in appealing to the court to rectify a wrong, if committed."

A so-called presentment or report should present facts obtained as a result of the inquiries authorized by section 260 of the Code of Criminal Procedure. The language of the report in question is the language of a lecture, not the language that would ordinarily be used in presenting facts to a court. It includes numerous philosophical conclusions but practically nothing of fact. The number of persons indicted for conditions involving vice are comparatively few. The district attorney had been in office for several months and had had the assistance of a number of grand juries prior to the October term, and until this last October term there have been no indictments for so-called vice conditions in Lockport. The grand jury itself says that the mayor and the police commissioners " are men of eminent respectability, high character and engaged in lawful occupations." Not one of these men has been indicted. All of this leads me to the conclusion that the portion of the so-called presentment or report above quoted constitutes an unwarranted imputation on the integrity, the good faith and the honesty of the petitioners. In view of this conclusion on my part, I am of the opinion that the portion of the so-called presentment or report above quoted, consisted wholly of matters immaterial

and improper in character for such a presentment or report, and that there should be stricken from the records of this court that portion of the so-called presentment or report heretofore quoted in full. To quote from *Matter of Jones* (181 N. Y. 389, 392), " such a motion does not involve a legal right of an individual, but the right of the court itself to keep its own records free from matters of an immaterial or improper character," and I feel it my duty to order stricken from the records of this court statements which, in my opinion, are unwarranted attacks on the honesty of the mayor and the commissioners.

An order may be prepared accordingly.